IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BERNADETTE WAITES,** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| v. | : | **No.: 10-cv-1487** |
| | : | |
| **KIRKBRIDE CENTER,** | : | |
| Defendant. | : | |

**M E M O R A N D U M**

**SITARSKI, M. J.**                                                                                                **May 23, 2011**

Currently pending before the Court is a motion for summary judgment filed by Defendant Kirkbride Center, Plaintiff's Response, and Plaintiff's Supplemental Responses. For the following reasons, the motion will be **GRANTED IN PART,** and **DENIED IN PART**.

**I.      INTRODUCTION**

Plaintiff Bernadette Waites ("Plaintiff") initiated this lawsuit against her former employer, Defendant Kirkbride Center ("Defendant"), by filing a Complaint on April 5, 2010. (Doc. No. 1). Plaintiff asserted that Defendant violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA") by terminating Plaintiff. Defendant filed a Motion to Dismiss (Doc. No. 3) on June 1, 2010 and Amended Motion to Dismiss (Doc. No. 4) on June 2, 2010, asserting that Plaintiff's ADA claim was time-barred. On June 11, 2010, Plaintiff filed an Amended Complaint (Doc. No. 5), to which Defendant filed an Answer (Doc. No. 6) on June 28, 2010.[1]

This matter was initially assigned to District Court Judge Juan R. Sanchez. On July 16,

---

[1] On November 19, 2010, this Court denied Defendant's motions to dismiss as moot, because Defendant had filed an Answer responding to the ADA claim. (Doc. No. 14).

2010, the parties consented to the exercise of jurisdiction by a United States Magistrate Judge under 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, and the matter was referred to me. (Doc. No. 9).

On March 1, 2011, Defendant filed a Motion for Leave to File an Amended Answer, seeking to include the affirmative defense of timeliness. (Doc. No. 18). Plaintiff opposed this motion (Doc. No. 21), to which Defendant filed a Reply (Doc. No. 22). This Court granted Defendant's motion on April 1, 2011, and directed the clerk of the court to separately docket the Amended Answer. (Doc. Nos. 24-25).

On March 2, 2011, Defendant filed a Motion for Summary Judgment. (Doc. No. 19). On March 3, 2011, Defendant filed the instant Amended Motion for Summary Judgment. (Doc. No. 20). Defendant moves for summary judgment on the grounds that Plaintiff's ADA claim is time-barred. Defendant also claims that summary judgment on this claim is appropriate because Plaintiff is unable to establish a prima facie case of discrimination because she is not disabled within the meaning of the ADA, was not regarded as disabled by Defendant, and was not terminated because of a disability. *See* Def.'s Mem. Law Supp. Mot. Summary Judgment, at 4-8. Defendant also moves for summary judgment on the grounds that Plaintiff's FMLA claim is time-barred. *See id.* at 8.

On March 21, 2011, Plaintiff filed a Response to Defendant's Motion for Summary Judgment. (Doc. No. 23). After permitting Defendant to file an Amended Answer, this Court granted Plaintiff until April 21, 2011 to file any supplemental response to Defendant's motion. (Doc. No. 30). On April 19, 2011, Plaintiff filed a Supplemental Response to Defendant's Motion for Summary Judgment. (Doc. No. 31). After this Court conducted oral argument on

2

May13, 2011, Plaintiff filed a Supplemental Response to the Timeliness of Plaintiff's Charge of Disability Discrimination to the EEOC on May 16, 2011. (Doc. No. 36). Accordingly, this matter is now ripe for disposition.

II. **BACKGROUND** [2]

Plaintiff began her employment with Defendant as a detox therapist in February 2005. Am. Compl. ¶ 7. Beginning in September 2007, Plaintiff began experiencing health problems. Am. Compl. ¶ 8. Although initially believed to be Subclavian Steal Syndrome, the doctors ruled out this diagnosis. Waites Dep. at 100-01. In fact, Plaintiff suffered from high blood pressure, a torn ligament in her shoulder, and mental problems including depression and hypoglycemia. Waites Dep. at 101-02, 106-08. Plaintiff's medical problems caused fainting spells, dizziness, fatigue, difficulty in thinking, and difficulty in functioning at work. Waites Dep. at 106.

Citing her doctor's recommendation to avoid strenuous activity, Plaintiff called out of work on September 4 and 5, 2007, and was compensated with paid time off. *See* Pl.'s Mem. Law, at 4; Connell Dep. at 35. On September 10, 2007, Plaintiff telephoned her supervisor, Mr. Kevin Collier, to inform him that she would miss work because felt ill and needed to visit a doctor. *See* Pl.'s Mem. Law, at 4. Plaintiff also telephoned on September 11 and 12, 2007 to inform Mr. Collier that her illness was getting worse and she expected to be admitted to the hospital. Am. Compl. ¶ 9; Waites Dep. at 60-61. During these conversations, Mr. Collier informed Plaintiff that a doctor's note was required if she was going to miss three days of work.

---

[2] Except as otherwise noted, the following facts are undisputed, or are taken in the light most favorable to the Plaintiffs.

Mr. Collier also advised Plaintiff how to obtain FMLA forms. Waites Dep. at 60-61; Pl.'s Mem. Law, Ex. B (letter from Ms. Madeleine Cardona confirming the content of the telephone conversations between Plaintiff and Mr. Collier). Plaintiff testified that she tried - unsuccessfully - to contact Defendant's Human Resources Department and Mr. Collier on September 13, 2007 about delivering the requested doctor's note. Waites Dep. at 61-63.

On September 14, 2007, Ms. Cardona, a manager in Defendant's Human Resources Department, telephoned Plaintiff to inform her that she was taken off the schedule for failing to deliver a doctor's note. *See* Pl.'s Mem. Law, at 4; Cardona Dep. at 31. After Plaintiff explained that she had tried in vain to contact the Human Resources Department the day before, Ms. Cardona advised Plaintiff to deliver a doctor's note to security. *See* Pl.'s Mem. Law, at 4-5. On September 15, 2007, Plaintiff attempted to deliver a doctor's note to Defendant, but left the note with security because she was denied access to the building based upon the Human Resources Department's request. Am. Compl. ¶ 10; Waites Dep. at 108.

On September 17, 2007, Plaintiff was admitted to Hahnemann University Hospital. Am. Compl. ¶ 11; Waites Dep. at 63. Plaintiff testified that the delay in being admitted was caused by a shortage of available beds. Waites Dep. at 104. Plaintiff remained in the hospital until September 20, 2007, when she was discharged. Am. Compl. ¶¶ 11-12. Plaintiff was not medically authorized to return to work until September 25, 2007. Am. Compl. ¶ 12.

On September 18, 2007, while Plaintiff was in the hospital, Defendant's agent spoke with Plaintiff's primary care physician, Dr. Joanne Connell, who confirmed that Plaintiff was hospitalized. *See* Pl.'s Mem. Law, at 5. Also, on that same day, Defendant sent Plaintiff a certified letter confirming Plaintiff's recent conversations with Mr. Collier, requesting proof of

her condition, advising her of the duty to inform Defendant of any subsequent missed days from work, and informed her that her continued employment was being examined in light of Plaintiff's violation of attendance policies. Am. Compl. ¶¶ 13-14; Pl.'s Resp., Ex. B. Plaintiff testified that she did not receive this letter until September 24, 2007. Am. Compl. ¶ 13; Waites Dep. at 109. In response to this letter, Plaintiff testified, she delivered the requested documentation to Defendant. Waites Dep. at 109. While at the location, Plaintiff spoke with executive director Scott Weinberg and Ms. Cardona. *See* Pl.'s Mem. Law, at 5-6. Ms. Cardona reviewed the doctor's notes, including an additional doctor's note that Dr. Connell faxed to Defendant, stating that Plaintiff could return to full duty. *See* Pl.'s Mem. Law, at 6. Ms. Cardona also informed Plaintiff that Plaintiff was currently not on the schedule and should receive a telephone call regarding her work status. *See* Pl.'s Mem. Law, at 6. Having received no communication for several days, Plaintiff left multiple telephone messages that were not returned. *See* Pl.'s Mem. Law, at 6. On October 1, 2007, Plaintiff received a letter from Defendant, advising that she was terminated for violating Defendant's attendance policy. Am. Compl. ¶ 15; Pl.'s Resp., Ex. C.

On July 15, 2008, Plaintiff submitted a preliminary EEOC questionnaire and scheduled an intake appointment with the EEOC for August 6, 2008, which concerned "the possible filing of a charge of employment discrimination." Am. Compl. ¶ 16, Ex. A. The EEOC formulated a formal Charge of Discrimination on August 20, 2008. Am. Compl. ¶ 18.

### III. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

5

56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" if there is sufficient evidence from which a jury could find in favor of the non-moving party. *Id.* It is not the court's role to weigh the disputed evidence and decide which is more probative, or to make credibility determinations. Rather, the court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) *(citing United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *Tigg Corp. v. Dow Corning Corp.*, 822 F.2d 358, 361 (3d Cir. 1987). If a conflict arises between the evidence presented by both sides, the court must accept as true the allegations of the non-moving party, and "all justifiable inferences are to be drawn in his favor." *Anderson,* 477 U.S. at 255.

The moving party bears the initial burden of demonstrating that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-24 (1986). Once the moving party carries this initial burden, the non-moving party must "come forward with specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587. The non-moving party must present something more than mere allegations, general denials, vague statements, or suspicions. *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992); *Fireman's Ins. Co. of Newark v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982). Instead, the non-moving party must present specific facts and "affirmative evidence in order to defeat a properly supported motion for summary judgment." *Anderson*, 477 U.S. at 257. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50. If the non-moving party has the burden of proof at trial, then that party

6

must establish the existence of each element on which it bears the burden. *Celotex Corp.*, 477 U.S. at 322-23.

IV. **DISCUSSION**

    A.    **ADA Claim**

        1.    **Timeliness**

Defendant argues that Plaintiff's ADA claim is time-barred because "she filed it more than 300 days after Defendant terminated her employment." Def.'s Mem. Law, at 8. Plaintiff did not initially respond to this argument. However, after this Court conducted oral argument and permitted the parties to file supplemental briefs, Plaintiff argues that her EEOC intake questionnaire constitutes a charge under the ADA. *See* Pl.'s Supp. Resp. Timeliness, at 5.

In order to pursue an ADA claim in federal court, a plaintiff first must comply with the procedural requirements set forth in Title VII of the Civil Rights Act of 1964. 42 U.S.C. § 12117(a); *Curtis v. Tyco Retail Healthcare Group, Inc.*, No. 06-4302, 2007 WL 1545613, at *2 (E.D. Pa. May 24, 2007) (*citing Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)). Specifically, a plaintiff must file a charge with the EEOC within 300 days of the alleged act of discrimination. *Curtis*, 2007 WL 1545613, at *2 (*citing* 42 U.S.C. § 2000e-5(e)(1)). The charge must be "'in writing under oath or affirmation and shall contain such information and be in such form as the Commission requires.'" *Buck*, 452 F.3d at 260 (*quoting* 42 U.S.C. § 2000e-5(b)).

> Pertinent EEOC regulations state that a charge "shall be in writing and shall be verified," 29 C.F.R. § 1601.9, and define the term "verified" as "sworn to or affirmed before a notary public, designated

7

> representative of the Commission, or other person duly authorized by law to administer oaths and take acknowledgments, or supported by an unsworn declaration in writing under penalty of perjury," 29 C.F.R. § 1601.3(a).

*Id.*; *see also Urban v. Bayer Corp. Pharm. Div.*, 245 Fed. Appx. 211, 213 (3d Cir. 2007) (commenting that an unverified intake questionnaire does not constitute a "charge" for purposes of tolling the 300 day limitations period).

Nevertheless, courts in this circuit have held that documents other than a formal charge may satisfy the charge requirement. *See Steiner v. Prof'l Servs. Indus., Inc.*, No. 08-723, 2009 WL 2950755, at *2 (W.D. Pa. Sept. 9, 2009) (attorney's letter to the EEOC); *Joseph v. Pennsylvania*, No. 06-4916, 2009 WL 1012464, at *1-2 (E.D. Pa. Apr. 15, 2009) (written EEOC charge questionnaire in a Title VII case); *Rupert v. PPG Indus., Inc.*, No. 08-723, 2009 WL 596014, at *17-18 (W.D. Pa. Feb. 26, 2009) (three questionnaires); *Curtis*, 2007 WL 1545613, at *4 (*citing Buck*, 452 F.3d at 261) ("[t]he Third Circuit has acknowledged documents other than a formal charge, if verified, may satisfy the 'charge' requirement laid out in Title VII of the Civil Rights Act of 1964"); *but see Hayes v. Del. State Univ.*, 726 F. Supp.2d 441, 452-53 (D. Del. 2010) (holding that an intake questionnaire did not constitute a charge in a Title VII action where the form explicitly stated that it was not a charge). In doing so, some courts have applied the Supreme Court's holding in *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008), an ADEA case.[3] *See Steiner*, 2009 WL 2959755, at *2; *Rupert*, 2009 WL 596014, at *15.

---

[3] This Court notes that district courts in the Third Circuit disagree whether *Holowecki* is limited to the ADEA or applies to Title VII and the ADA. *Compare Kellam v. Independence Charter Sch.*, 735 F. Supp.2d 248, 253 (E.D. Pa. 2010) (holding that *Holowecki* is inapplicable to a Title VII case)*, with Steiner*, 2009 WL 2950755, at *2 (applying *Holowecki* to an ADA and ADEA case). One court commented that the Third Circuit has suggested extending *Holowecki* to the Title VII context. *Pourkay v. City of Philadelphia*, No. 06-5539, 2009 WL 1795814, at *5

According to *Holowecki*,

> in addition to the information required by the regulations, *i.e.*, an allegation and the name of the charged party, if a filing is to be deemed a charge it must be reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settled a dispute between the employer and the employee.

*Holowecki*, 552 U.S. at 402. However, merely filing an intake questionnaire does not automatically give rise to an inference that an employee is requesting remedial action. *Id.* at 405 (although the intake questionnaire alone may not constitute a charge, an accompanying six-page affidavit sufficed).

In the instant case, Defendant argued that Plaintiff's ADA claim was untimely because she failed to file a charge within the 300 day statutory period. Defendant did not provide any legal or factual basis for its argument. Although Plaintiff did not address this issue in her initial response to Defendant's Summary Judgment motion, Plaintiff's Amended Complaint averred that the "information supplied by Plaintiff to the EEOC, in written reply to the preliminary questionnaire can reasonably be construed as a request for the agency to take remedial action to protect the rights of Plaintiff, thereby administratively exhausting this claim in a timely fashion." Am. Compl. ¶ 17. Furthermore, Plaintiff's second supplemental response included, among other documents, a copy of the EEOC intake questionnaire, an affidavit from Plaintiff, and the formal charge of discrimination. *See* Pl.'s Supp. Resp. Timeliness, Ex. B-D.

The undisputed facts of record establish that Plaintiff was terminated on October 1, 2007.

---

n.15 (E.D. Pa. June 23, 2009) (*citing Joseph v. Commonwealth of Pa. Dept. Of Env't Prot.*, 309 Fed. Appx. 636 (3d Cir. 2009)). Nevertheless, as detailed herein, this Court finds that regardless of whether *Holowecki* controls, Plaintiff filed sufficient information with the EEOC to constitute a charge.

Am. Compl. ¶ 15; Pl.'s Resp., Ex. C. The 300 day limitation period expired on July 28, 2008.[4]

Plaintiff submitted a preliminary questionnaire to the EEOC on July 15, 2008, which is within the 300 day statutory period. Am. Compl. ¶ 16. Also, on July 15, 2008, Plaintiff scheduled an intake appointment with the EEOC for August 6, 2008, which concerned "the possible filing of a charge of employment discrimination." Am. Compl., Ex. A. However, the intake appointment on August 6, 2008 occurred beyond the 300 day statutory period. Further, the EEOC formulated the formal Charge of Discrimination on August 20, 2008, which was also beyond the 300 day statutory period. Am. Compl. ¶ 18.

This Court finds that Plaintiff's filings with the EEOC prior to the expiration of the 300 day limitation period, which were the intake questionnaire and a form scheduling an intake appointment, sufficed to constitute a charge. Upon review of the intake questionnaire, Plaintiff provided contact information for herself and Defendant, facts that concerned the alleged discrimination, the number of employees, and whether she cross-filed with another agency. *See* Pl.'s Supp. Resp. Timeliness, Ex. C; *see also* 29 C.F.R. § 1601.12(a). Further, the questionnaire states that "[w]hen this form constitutes the only timely written statement of allegations of employment discrimination, the Commission will, consistent with 29 CFR 1601.12(b) and 29 CFR 1626.8(b), consider it to be a sufficient charge of discrimination under the relevant statute(s)." *See* Pl.'s Supp. Resp. Timeliness, Ex. C at 5. This information meets the requirements of 29 C.F.R. § 1601.12.

---

[4] Because the three-hundredth day (July 27, 2008) fell on a Sunday, the statute of limitations was extended to the following Monday (July 28, 2008) pursuant to Federal Rule of Civil Procedure 6(a)(1)(C). *See Davitt v. Open MRI of Allentown, LLC*, No. 03-5612, 2003 WL 23162429, at *4 (E.D. Pa. Dec. 17, 2003) (applying Rule 6(e) to time calculation made under 42 U.S.C. § 2000e).

Additionally, even if *Holowecki* applies to the ADA, this Court finds that the questionnaire can be reasonably construed as a request for the agency to take remedial action. *See Kellam*, 735 F. Supp.2d at 253; *Joseph*, 2009 WL 1012464, at *2. Because of the information provided, the intake questionnaire constituted a charge under the regulations and *Holowecki*.[5]

Therefore, Defendant's motion for summary judgment based upon the timeliness of Plaintiff's ADA claim will be denied.

### 2. Merits

The ADA prohibits covered employers from discriminating against disabled individuals. *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010) (*citing* 42 U.S.C. § 12112(a) (2006)).[6] In analyzing such claims, courts utilize the burden-shifting framework announced in

---

[5] Although verification is statutorily required, the Third Circuit has held that "'it is not a jurisdictional prerequisite for suit'" and is subject to waiver. *Louis v. Ruis Inventory Specialists, LLC*, No. 08-2662, 2010 WL 831255, at *4 (E.D. Pa. Mar. 4, 2010) (*quoting Buck*, 452 F.3d at 262-63). Here, as in *Louis*, the verification requirement should be waived because Plaintiff initially filed with the EEOC *pro se*, the charge contains clear and specific allegations of discrimination, and Plaintiff subsequently filed a formal, verified Charge of Discrimination on August 20, 2008. *See id.* Additionally, the regulations permit amendments to cure deficiencies in charges and relate the amendments back to the time that the initial charge was filed. *See* 29 C.F.R. § 1601.12(b); *see also Buck*, 452 F.3d at 260 (stating that amendments, which can include verifications, relate back); *Wood v. Kaplan Props., Inc.*, No. 09-1941, 2009 WL 3230267, at *5 (D.N.J. Sept. 29, 2009). Here, despite being filed after the 300 day period, Plaintiff's formal charge was verified and relates back to the date the questionnaire was filed, which makes it timely. *See Wood*, 2009 WL 3230267, at *5.

[6] The ADA was amended in 2008. *Sulima*, 602 F.3d at 185 n.2. However, these amendments do not apply to the instant case because the events at issue occurred before the amendments took effect on January 1, 2009. *See id.*; *see also Britting v. Sec'y, Dept. Veterans Affairs*, __ Fed. Appx. __, 2011 WL 300240, at *2 (3d Cir. Feb. 1, 2011) (ADA Amendments Act of 2008 does not retroactively apply). Therefore, the citations are to the statutes and regulations as they existed during the events in question. *See Sulima*, 602 F.3d at 185 n.2.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Shaner v. Synthes*, 204 F.3d 494, 500 (3d Cir. 2000). Under the *McDonnell Douglas* framework, the plaintiff has the initial burden to show a prima facie case of discrimination; the burden then shifts to the defendant to offer a legitimate, non-discriminatory reason for the employment actions; finally, the burden shifts back to the plaintiff to prove that the offered reason is pretextual. *Id.* at 500-01.

In order to prove a prima facie case of discrimination, a plaintiff must show:

> (1) that he is disabled within the meaning of the ADA,
>
> (2) that he is otherwise qualified for the job, with or without reasonable accommodations, and
>
> (3) that he was subjected to an adverse employment decision as a result of discrimination.

*See Sulima*, 602 F.3d at 185 (*citing Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir. 1999)). In defining the prima facie case, the Third Circuit has utilized Equal Employment Opportunity Commission regulations. *See id.*

Regarding the first prong, "[a]n individual is disabled if he has 'a physical or mental impairment that substantially limits one or more of the major life activities of such individual.'" *Id.* (*quoting* 42 U.S.C. § 12102(2)). An impairment is defined as "'[a]ny physiological disorder, or condition . . . affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine.'" *Sulima*, 602 F.3d at 185 (*quoting* 29 C.F.R. § 1630.2(h)(1)). "'Major life activities' include 'functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.'" *Id.* (*quoting* 29 C.F.R. § 1630.2(i)). "A major life activity is

substantially limited if an individual is unable to perform it or is '[s]ignificantly restricted as to the condition, manner or duration' under which it is performed, as compared to an average person in the general population." *Id.* (*quoting* 29 C.F.R. § 1630.2(j)(1)). To determine whether a substantial limitation exists, a court should consider the following factors:

> (1) the "nature and severity of the impairment";
> 
> (2) the "duration or expected duration of the impairment"; [and]
> 
> (3) the actual or expected "permanent or long term impact" resulting from the impairment.

*Id.* (*quoting* 29 C.F.R. § 1630.2(j)(2)). Further, "[a] nonpermanent or temporary condition cannot be a substantial impairment under the ADA." *Id.* (*quoting Williams v. Phila. Hous. Auth.*, 380 F.3d 751, 765 (3d Cir. 2004)).

In the instant case, Defendant argues that Plaintiff is not disabled under ADA because she does not suffer from any mental or physical impairment that substantially limits a major life activity. In response, Plaintiff asserts that she is disabled. Specifically, Plaintiff claims that she experienced fainting spells, dizziness, and other symptoms that impaired her ability to think and function at home and as a detox therapist. Plaintiff further avers that her disability caused her physicians to hospitalize her.

Plaintiff has been diagnosed with high blood pressure, hypoglycemia, and depression, which cause her to suffer from "fainting spells, dizziness, an inability to think or concentrate, and other serious symptoms." *See* Pl.'s Mem., at 13. As the Third Circuit has stated, high blood pressure and depression are recognized impairments under the EEOC regulations. *See Szczesny v. Gen. Elec. Co.*, 66 Fed. Appx. 388, 393 (3d Cir. 2003). Therefore, Plaintiff has an actual

13

impairment within the meaning of the ADA. However, the existence of an impairment alone is insufficient to establish a disability. *Benko v. Portage Area Sch. Dist.*, 241 Fed. Appx. 842, 846-47 (3d Cir. 2007) (*quoting Kelly v. Drexel Univ.*, 94 F.3d 102, 108 (3d Cir. 1996)). Plaintiff has provided no evidence which shows that the extent of the limitation in terms of her own experience is substantial. *See id.* Although Plaintiff claims that she suffers from symptoms at work and at home, she failed to establish that the nature and severity of the symptoms create a substantial limitation. Indeed, Plaintiff's primary care physician testified that although Plaintiff's blood pressure was elevated, there was no reason that her blood pressure would prevent her from doing her job. Connell Dep. at 49. Therefore, Plaintiff did not suffer from an actual disability as contemplated by the ADA.

Nevertheless, an individual may also be considered disabled under the ADA if she has a record of such impairment or is regarded as having such an impairment. *See* 42 U.S.C. § 12102(2); *DiSantis v. Morgan Props. Payroll Servs.*, No. 09-6153, 2010 WL 3606267, at *5 (E.D. Pa. Sept. 16, 2010). A person is "regarded as" disabled if she:

> (1) [h]as a physical or mental impairment that does not substantially limit major life activities but is treated by the covered entity as constituting such limitation;
>
> (2) [h]as a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; or
>
> (3) [h]as [no such impairment] but is treated by a covered entity as having a substantially limiting impairment.

*Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 434 (3d Cir. 2009) (*quoting Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 187 (3d Cir. 1999)). However, "'the mere fact that an employer is

aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that the perception caused the adverse employment action.'" *DiSantis*, 2010 WL 3606267, at *6 (*quoting Kelly*, 94 F.3d at 109). The employer must regard the employee as disabled within the meaning of the ADA (i.e., the employer believed that "she could not perform a wide array of jobs either permanently or for an indefinite duration"). *Benhanna v. Monongahela Valley Hosp.*, No. 09-0241, 2010 WL 4340961, at *5 (W.D. Pa. Oct. 22, 2010) (*citing Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375 (3d Cir. 2002)).

Here, Defendant argues that Plaintiff was not regarded as disabled by Defendant because Plaintiff did not ever identify herself as a person with a disability, which, in Defendant's opinion, would be difficult because she did not suffer from a disability. Also, Plaintiff never sought any accommodation (e.g., leave), and Dr. Connell could not identify any such condition. In response, Plaintiff argues that Defendant regarded her as disabled because Defendant knew about the condition. Plaintiff asserts that if she would have tested positive for Subclavian Steal Syndrome, she would have been disabled under the ADA.

Defendant's argument that Plaintiff's lack of disability prevents her from claiming she was "regarded as" disabled is without merit. As the Third Circuit has stated, a person can be regarded as disabled even if the employee has no impairment "but is treated by a covered entity as having a substantially limiting impairment." *See Eshelman*, 554 F.3d at 434 (*quoting Pathmark*, 177 F.3d at 187). Thus, this argument fails.

On the other hand, at oral argument, Defendant clearly articulated its argument that Plaintiff has provided no evidence that Defendant regarded Plaintiff as disabled under the ADA. Defendant conceded that it received doctor's notes and knew that Plaintiff was hospitalized.

15

However, Defendant argued that at no time did it ever perceive Plaintiff as disabled within the meaning of the ADA. This Court agrees that Plaintiff failed to provide sufficient evidence to demonstrate that Defendant regarded Plaintiff as disabled within the ADA. *See Benhanna*, 2010 WL 4340961, at *5; *see also Ross v. Kraft Foods N. America, Inc.*, 347 F. Supp.2d 200 (E.D. Pa. 2004) (must provide evidence that employee was regarded as disabled under the statute, not just "somehow disabled"). Plaintiff's evidence demonstrated that Defendant knew that she was ill and in the hospital, not that Defendant perceived Plaintiff as unable to perform a wide array of jobs or any major life activities. Plaintiff did not show that Defendant regarded her as having anything other than a finite illness. Thus, Plaintiff has not provided sufficient evidence that she was regarded as disabled by Defendant.

Therefore, summary judgment is proper as to Plaintiff's ADA claim.

**B.     FMLA Claim**

Defendant also moves for summary judgment on the grounds that Plaintiff's FMLA claim is time-barred because Plaintiff failed to provide any evidence of willfulness, resulting in the application of the two-year statute of limitations. Def.'s Mem. Law, at 8. Plaintiff's Complaint was filed on April 5, 2010, approximately 2.5 years after her termination. Thus, Plaintiff argues that Defendant willfully violated the FMLA, subjecting her claim to the three-year statute of limitations. Plaintiff relies upon Defendant's alleged admission that Plaintiff was likely eligible for FMLA leave during the relevant time period as well as Defendant's failure to implement a policy handling FMLA leave, train its employees regarding the administration of FMLA leave, and notify Plaintiff of her rights under the FMLA. Pl.'s Supp. Resp., at 2.

To begin, the FMLA was enacted to address problems arising from "inadequate job

security for employees who have serious health conditions that prevent them from working for temporary periods." 29 U.S.C. § 2601(b)(1). "The act was designed to provide a balance between 'entitl[ing] employees to take reasonable leave for medical reasons' and 'accommodat[ing] the legitimate interests of employers.'" *Seifert v. Commonwealth of Pa. Human Relations Comm'n*, 515 F. Supp.2d 601, 610 (W.D. Pa. 2007) (*quoting* 29 U.S.C. §§ 2601(b)(1)-(2)). "The Third Circuit has interpreted the FMLA as containing 'two relatively distinct types of provisions:' (1) 'interference' provisions, which set floors for employer conduct; and (2) 'retaliation' provisions, which prohibit employers from discriminating against employees for exercising their FMLA rights." *Yandrisevitz v. H.T. Lyons, Inc.*, No. 08-1444, 2009 WL 2195139, at * 8 (E.D. Pa. July 22, 2009) (*quoting Callison v. City of Philadelphia*, 430 F.3d 117, 119 (3d Cir. 2005)).

The FMLA requires a plaintiff to file a complaint "'not later than 2 years after the date of the last event constituting the alleged violation for which the action is brought.'" *Zankel v. Temple Univ.*, No. 05-2760, 2006 WL 1083600, at *7 (E.D. Pa. Apr. 24, 2006) (*quoting* 29 U.S.C. § 2617(c)(1)). However, this statutory period is extended to three years where a plaintiff asserts a willful violation. *Id.* (*quoting* 29 U.S.C. § 2617(c)(2)). The filing of an administrative charge with the EEOC does not affect the applicable statute of limitations. *Id.*

Although the Supreme Court and the Third Circuit have not defined "willfulness" under the FMLA, courts in this circuit have adopted the Fair Labor Standards Act's definition. *Caucci v. Prison Health Srvs., Inc.*, 153 F. Supp.2d 605, 609 (E.D. Pa. 2001) (*citing McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)); *see also Seifert*, 515 F. Supp.2d at 611-12; *Rigel v. Wilks*, No. 03-971, 2006 WL 3831384, at *13 (M.D. Pa. Dec. 28, 2006). Under that definition,

17

a "'plaintiff must show that the employer knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute.'" *Sommer v. Vanguard Group*, 380 F. Supp.2d 680, 686 (E.D. Pa. 2005) (*quoting Caucci*, 153 F. Supp.2d at 609). A plaintiff "must do more than show that his 'employer knew [the FMLA] was in the picture,' because such a low standard would 'obliterate any distinction between willful and nonwillful violations." *Rigel*, 2006 WL 3831384, at *13 (*quoting McLaughlin*, 486 U.S. at 130, 132-33). Further, willfulness requires more than mere negligence. *Id.*

Plaintiff relies upon a bevy of factual allegations to evidence Defendant's alleged willful violation of the statute. According to Plaintiff, Defendant purposefully ignored Plaintiff's efforts to contact it, prohibited Plaintiff access to the building to drop off doctor's notes, failed to process her absences as FMLA leave despite knowledge of her illness, and terminated her after Plaintiff requested to return to work. Further, Plaintiff alleges that Defendant's executives failed to comply with the requirements of the FMLA by failing to inform employees of FMLA leave, post the required information, or having someone in charge of its administration. Because the statute of limitations is an affirmative defense, the burden of establishing its applicability stays with the employer. *Shalley v. Fleet Credit Card Servs., LP*, No. 02-4709, 2003 WL 22100858, at *2 (E.D. Pa. Aug. 1, 2003) (*quoting Bradford-White Corp. v. Ernst & Whinney*, 872 F.2d 1153, 1161 (3d Cir. 1989)). Accordingly, at the summary judgment stage, the employer "must demonstrate that there is no genuine issue of material fact . . . that any violation of the FMLA was not willful." *Id.*

Drawing all inferences in Plaintiff's favor, this Court finds that a genuine issue of material fact exists regarding whether Defendant willfully violated the FMLA. *See id.* Plaintiff

claims that on September 11 and 12, 2007, she telephoned Mr. Collier about her illness and impending hospitalization. Am. Compl. ¶ 9; Waites Dep. at 60-61. Although Plaintiff does not allege that she expressly requested FMLA leave, a reasonable jury might conclude that this notice sufficed as an attempted invocation of the FMLA. *See* 29 C.F.R. § 825.303(b). During these conversations, Mr. Collier told Plaintiff to contact the Human Resources Department regarding required doctor's notes and how to obtain FMLA forms. Pl.'s Mem. Law, Ex. B (letter from Ms. Cardona that confirms the content of the telephone conversations between Plaintiff and Mr. Collier). However, Plaintiff contends that almost immediately after informing Mr. Collier of her illness and need for leave, she experienced significant difficulties contacting Defendant. On September 13, 2007, Plaintiff claims that she was unsuccessful in contacting the Human Resources Department and Mr. Collier regarding the doctor's notes. Waites Dep. at 61-63. Then, according to Plaintiff, she was denied access to the building by security on September 15, 2007, upon the direction of the Human Resources Department. Am. Compl. ¶ 10; Waites Dep. at 108. Thus, taking the facts in the light most favorable to Plaintiff, within three days of being told to contact the Human Resources Department regarding doctor's notes and FMLA leave, Defendant prohibited Plaintiff from entering the building.

There is also evidence from which a reasonable jury might conclude that Defendant made Plaintiff's attempts at communication difficult. As Defendant was aware of the possibility that Plaintiff sought FMLA leave, a reasonable juror could conclude that Defendant either knowingly violated or recklessly disregarded Plaintiff's rights under the FMLA. *See Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009) (holding that an employee fired for requesting FMLA leave can establish a cause of action under both interference and retaliation theories); *Turevsky v.*

*Fixtureone Corp.*, No. 10-2911, 2010 WL 5258065, at *4 (E.D. Pa. Dec. 23, 2010) (in denying motion to dismiss, court held that pleading the temporal proximity between requesting FMLA leave and discharge, and the defendant's conflicting reason for discharge, sufficed to plead willfulness); *Shalley*, 2003 WL 22100858, at *3.

Therefore, summary judgment of the FMLA claim is improper because a genuine issue of material fact exists regarding whether Defendant willfully violated Plaintiff's FMLA rights.

## V. CONCLUSION

Because Plaintiff has provided evidence that would allow a reasonable jury to conclude that Defendant willfully violated Plaintiff's FMLA rights, there exists a question of material fact that renders summary judgment inappropriate for the FMLA claim. However, as Plaintiff has not provided evidence that Defendant regarded her as disabled, the motion for summary judgment will be granted as to the ADA claim in favor of Defendant.

An appropriate Order follows.

BY THE COURT:

/s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE