IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

BERNADETTE WAITES,    :   CIVIL ACTION
   Plaintiff,      :
            :
 v.         :   No.: 10-cv-1487
            :
KIRKBRIDE CENTER,    :
   Defendant.     :

M E M O R A N D U M

SITARSKI, M. J.                    **July 30, 2012**

   Currently pending before the Court are Plaintiff Bernadette Waites's ("Plaintiff") Motion

for Sanctions (Doc. No. 68) and Plaintiff's Motion for New Trial (Doc. No. 71).  For the

following reasons, both motions will be **DENIED**.


I.   <u>FACTS</u>

   The factual background of this case has been detailed by this Court previously.  *See*

*Waites v. Kirkbride Center*, No. 10-1487, 2011 WL 2036689 (E.D. Pa. May 23, 2011) (Doc. No.

39).  Therefore, the facts are only briefly summarized here.

   Plaintiff began her employment with Defendant Kirkbride Center ("Defendant") as a

detox therapist in February 2005.[1]  Beginning in September 2007, Plaintiff began experiencing

health problems.  Although initially believed to be Subclavian Steal Syndrome, the doctors ruled

out this diagnosis.  In fact, Plaintiff suffered from high blood pressure, a torn ligament in her

shoulder, and mental problems arising from depression and hypoglycemia.  Plaintiff's medical

problems caused fainting spells, dizziness, fatigue, difficulty in thinking, and difficulty in

---

  [1] Defendant has noted that "Kirkbride Center is a fictitious name for Corecare Behavioral
Health Management, Inc."  *See* Def.'s Resp. to Mot. Sanctions 1 n.1.

functioning at work.  Plaintiff began missing work.  Initially, Plaintiff properly telephoned Mr.

Kevin Collier (her supervisor) about her absences.  However, Plaintiff did not continue

telephoning Defendant about subsequent absences and failed to timely provide doctor's notes.

Plaintiff was admitted into the hospital from September 17 through September 20, 2007.

Plaintiff's doctor subsequently provided a note that she was medically cleared to return to work.

Defendant gave Plaintiff the opportunity to explain why she was absent and neglected to

call out sick.  Plaintiff, however, could not demonstrate any suitable reason for failing to abide by

Defendant's attendance policy.  After receiving letters from Defendant's Human Resources

Department, Plaintiff was terminated on October 1, 2007 due to a violation of Defendant's No

Call/No Show Policy.  Plaintiff subsequently submitted information to the Equal Employment

Opportunity Commission ("EEOC"), which formulated a formal Charge of Discrimination.

Plaintiff instituted the current action against Defendant by filing a Complaint on April 5,

2010.  (Doc. No. 1).  Plaintiff alleged that Defendant violated the Americans with Disabilities

Act, 42 U.S.C. § 12101 *et seq.* ("ADA"), and the Family and Medical Leave Act, 29 U.S.C. §

2601 *et seq.* ("FMLA"), by terminating Plaintiff.  Defendant filed a Motion to Dismiss (Doc. No.

3) on June 1, 2010 and Amended Motion to Dismiss (Doc. No. 4) on June 2, 2010, asserting that

Plaintiff's ADA claim was time-barred.  On June 11, 2010, Plaintiff filed an Amended

Complaint (Doc. No. 5), to which Defendant filed an Answer (Doc. No. 6) on June 28, 2010.[2]

This matter was initially assigned to District Court Judge Juan R. Sanchez.  On July 16,

2010, the parties consented to the exercise of jurisdiction by a United States Magistrate Judge

---

[2]  On November 19, 2010, this Court denied Defendant's motions to dismiss as moot, because Defendant had filed an Answer responding to the ADA claim.  (Doc. No. 14).

under 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, and the matter was referred to me.  (Doc. No. 9).

Defendant filed an Amended Motion for Summary Judgment (Doc. No. 20), to which Plaintiff filed multiple responses.  After holding oral argument, this Court granted Defendant's motion regarding the ADA claim, but denied the motion in all other respects.  (Doc. No. 39).  Consequently, this matter proceeded to trial on Plaintiff's FMLA claim, which lasted from June 3 to June 9, 2011.[3]

During trial, a recurring theme in Plaintiff's case was Defendant's failure to produce Plaintiff's personnel file during discovery.  On the last day of testimony (i.e., June 8, 2011), defense counsel produced the file – stating that despite prior unsuccessful searches, the file was found during a renewed search the previous night.  After being given time to review the personnel file, the Court asked Plaintiff how she wished to proceed.  Plaintiff's counsel stated:

> And my position is, I'm ready to go, and we can – portions of this file, ignoring the untimeliness issue, okay, portions of this file are admissible.  I'm not waiving my contention that the Defendant should be sanctioned for this belated discovery privilege, but as to the admissibility and utilization of the same at trial, why not.  I brought it in issue.

*See* N.T. 6/8/2011 at 24.  Thereafter, Plaintiff's counsel introduced documents within the personnel file, and even moved for the admission of a handwritten letter by Plaintiff that was in the file.  The handwritten letter stated that Plaintiff contacted Mr. Collier to decline FMLA leave.

---

[3]  Because Plaintiff filed the instant lawsuit more than two years after her termination, Plaintiff had to prove a willful violation of the FMLA in order to succeed. *See Zankel v. Temple Univ.*, No. 05-2760, 2006 WL 1083600, at *7 (E.D. Pa. Apr. 24, 2006) (identifying the statute of limitations for willful versus non-willful violations of the FMLA); *see also* 29 U.S.C. § 2617(c)(1)-(2).

Plaintiff confirmed that the handwritten document was in fact written by her, but testified that she did not recall the circumstances surrounding the letter (e.g., when and why she wrote it). Plaintiff also denied the accuracy of many of the statements within the letter.

On June 9, 2011, the jury returned a verdict in favor of Defendant on the FMLA count. (Doc. No. 64).  Judgment was entered for Defendant and against Plaintiff.  (Doc. No. 66). Plaintiff subsequently filed the instant post-trial motions, both of which seek a new trial as the remedy.  (Doc. Nos. 68 & 71).  Defendant responded to the Motion for Sanctions on July 13, 2011 (Doc. No. 72), and the Motion for New Trial on July 30, 2011 (Doc. No. 75).  Accordingly, both motions are now ripe for disposition.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 59 allows a trial court to "grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  The decision to grant a new trial is within the trial court's discretion.  *See Blanca v. Raymark Indus.*, 972 F.2d 507, 512 (3d Cir. 1992).  "Such an endeavor is not, however, lightly undertaken, because it necessarily 'effects a denigration of the jury system and to the extent that new trials are granted the judge takes over, if he does not usurp, the prime function of the jury as the trier of the facts.'"  *Guynup v. Lancaster Co.*, No. 06-4315, 2009 WL 541533, at *1 (E.D. Pa. Mar. 3, 2009) (*quoting Lind v. Schenley Indus., Inc.,* 278 F.2d 79, 90 (3d Cir. 1960)).  "Courts have granted new trials when there have been prejudicial errors of law or when the verdict is against the weight of the evidence."  *Jones v. City of Phila.*, No. 90-02974, 2008 WL 1794842, at *1 (E.D. Pa. Apr. 18,

4

2008).

When the asserted basis for a new trial is the that jury verdict is against the weight of the evidence, a trial court should grant a new trial "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks [the court's] conscience." *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 366 (3d Cir. 1999) (*quoting Williamson v. Consol. Rail Corp.*, 926 F.2d 1344, 1353 (3d Cir. 1991)).  In reviewing a motion for a new trial, the court must "'view all the evidence and inferences reasonably drawn therefrom in the light most favorable to the party with the verdict.'"  *Marino v. Ballestas*, 749 F.2d 162, 167 (3d Cir. 1984) (*quoting Chuy v. Phila. Eagles Football Club*, 595 F.2d 1265, 1273 (3d Cir. 1979)).

When the asserted basis for a new trial is trial error by the judge, "'the court's inquiry . . . is twofold.  It must first determine whether an error was made in the course of the trial, and then must determine whether the error was so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice.'"  *Guynup*, 2009 WL 541533, at *2 *(quoting Farra v. Stanley-Bostitch, Inc.*, 838 F. Supp. 1021, 1026 (E.D. Pa. 1993)).


## III.    DISCUSSION

_____In Plaintiff's Motion for Sanctions, Plaintiff requests this Court to vacate the judgment and order a new trial pursuant to Federal Rule of Civil Procedure 37.  *See* Pl.'s Mot. Sanctions, Proposed Order.  Specifically, Plaintiff argues that Defendant should be sanctioned for failing to produce Plaintiff's personnel file during discovery or immediately after Defendant found it.  *See* Pl.'s Mot. Sanctions ¶ 17.

In Plaintiff's Motion for New Trial, Plaintiff asks this Court to grant a new trial based upon the following claims for relief:

    (1)    The Court improperly granted summary judgment on Plaintiff's ADA claim.

    (2)    The Court improperly admitted into evidence:
        (a)    Plaintiff's personnel file; and
        (b)    Defendant's prior employee manual and human resources documentation.

    (3)    The Court erred by:
        (a)    failing to include an interrogatory regarding an employer's notice requirement in the verdict sheet;
        (b)    utilizing the term "appropriate notice" in the verdict sheet, which was vague and confusing, and caused the verdict to be against the weight of the evidence;
        (c)    failing to instruct the jury regarding statements against interest as requested by Plaintiff; and
        (d)    failing to reconsider its dismissal of Plaintiff's retaliation claim, and by failing to instruct the jury on same.[4]

*See* Pl.'s Mot. New Trial; *see also* Pl.'s Mem. Law Supp. Mot. New Trial.  In response, Defendant contends that relief is not due.

This Court will decide each claim for relief separately.

---

[4]  Plaintiff also briefly mentions that Defendant violated this Court's sequestration order and that the testimony of Ms. Lois Cody was improperly permitted.  *See* Pl.'s Mem. Law Supp. Mot. Sanctions 5-6; *see also* Pl.'s Mot. New Trial ¶¶ 17-18.  However, other than these passing mentions, Plaintiff failed to provide any further argument in support of these statements. Defendant did not respond to these undeveloped arguments.  Therefore, this Court finds it improper to address these issues.

A.      **Granting Summary Judgment on Plaintiff's ADA Claim**[5]

Plaintiff argues that this Court "erred by granting summary judgment on the merits of Plaintiff's ADA claim because . . . [she] adduced sufficient evidence to establish a *prima facie* claim under the ADA."  Pl.'s Mem. Law Supp. Mot. New Trial 12-13.  Specifically, Plaintiff argues that this Court erred by determining that Plaintiff was not regarded by her employer as being disabled.  *Id.* at 13.  In response, Defendant contends that Plaintiff failed to provide any "new facts, legal argument, or change in the applicable caselaw" to convince this Court to upset its prior holding.  Def.'s Mem. Law Re: Mot. New Trial 9.

The ADA prohibits covered employers from discriminating against disabled individuals.  *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010) (*citing* 42 U.S.C. § 12112(a) (2006)).[6]  In analyzing such claims, courts utilize the burden-shifting framework announced in

---

[5]  Some courts have determined that Rule 59(a) is not the proper vehicle to review an order granting summary judgment.  *See, e.g., Hobbs v. Baker Hughs Oilfield Operations, Inc.*, No. V-06-97, 2008 WL 577386, at *1 (S.D. Tex. Feb. 29, 2008); *Kimble v. Morgan Props.*, No. 02-9359, 2005 WL 2847266, at *2 n.3 (E.D. Pa. Oct. 25, 2005); *Browne v. Signal Mountain Nursery, L.P.*, 286 F. Supp. 2d 904, 918-19 (E.D. Tenn. 2003); *see also Merrill v. County of Madera*, 389 Fed. Appx. 613, 615 (9th Cir. 2010) ("a Rule 59(a) motion for new trial is not available on claims or causes of actions for which Plaintiffs never received a trial").  Here, Plaintiff has not cited, and this Court has not found, any cases where a new trial was granted based upon an alleged improper grant of summary judgment.  According to the language of Rule 59(a), relief is proper "for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Plaintiff has failed to demonstrate such.  Nevertheless, in the interest of completeness, this Court will review its grant of summary judgment on Plaintiff's ADA claim.  *See Kimble*, 2005 WL 2847266, at *2 n.3.

[6]  The ADA was amended in 2008.  *Sulima*, 602 F.3d at 185 n.2.  However, these amendments do not apply to this case because the events at issue occurred before the amendments took effect on January 1, 2009.  *See id.*; *see also Britting v. Sec'y, Dep't Veterans Affairs*, 409 Fed. Appx. 566, 569 (3d Cir. 2011) (ADA Amendments Act of 2008 does not retroactively apply).  Therefore, this Court will utilize the statutes and regulations as they existed during the events in question.  *See Sulima*, 602 F.3d at 185 n.2.

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Shaner v. Synthes*, 204 F.3d 494,

500 (3d Cir. 2000).  Under the *McDonnell Douglas* framework, the plaintiff has the initial burden

of showing a prima facie case of discrimination; the burden then shifts to the defendant to offer a

legitimate, non-discriminatory reason for the employment actions; finally, the burden shifts back

to the plaintiff to prove that the offered reason is pretextual.  *Id.* at 500-01.

In order to prove a prima facie case of discrimination, a plaintiff must show:

> (1) that she is disabled within the meaning of the ADA,
>
> (2) that she is otherwise qualified for the job, with or without reasonable accommodations, and
>
> (3) that she was subjected to an adverse employment decision as a result of discrimination.

*See Sulima*, 602 F.3d at 185 (*citing Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 306 (3d Cir.

1999)).  In defining the prima facie case, the Third Circuit has utilized EEOC regulations.  *See id.*

The first prong of the prima facie case is at issue in the instant motion.  Plaintiff appears

to concede that she did not suffer from an actual disability under the ADA, as her argument

focuses exclusively upon the whether she was regarded as disabled.  *See* Pl.'s Mem. Law Supp.

Mot. New Trial 13 ("At issue is whether the court erred by determining that [Plaintiff] was not

regarded by her employer as being disabled.").  Even if Plaintiff does not suffer from an actual

disability, she may be considered disabled under the ADA if she has a record of such an

impairment or is regarded as having such an impairment.  *See* 42 U.S.C. § 12102(1); *DiSantis v.*

*Morgan Props. Payroll Servs.*, No. 09-6153, 2010 WL 3606267, at *5 (E.D. Pa. Sept. 16, 2010).

A person is "regarded as" disabled if she:

> (1) [h]as a physical or mental impairment that does not substantially

8

> limit major life activities but is treated by the covered entity as
> constituting such limitation;
>
> (2) [h]as a physical or mental impairment that substantially limits
> major life activities only as a result of the attitudes of others toward
> such impairment; or
>
> (3) [h]as [no such impairment] but is treated by a covered entity as
> having a substantially limiting impairment.

*Eshelman v. Agere Sys., Inc.*, 554 F.3d 426, 434 (3d Cir. 2009) (*quoting Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 187 (3d Cir. 1999)).  This analysis focuses on "'the reactions and perceptions of the persons interacting or working with [Plaintiff],'" not on Plaintiff and her actual disabilities.  *Buskirk v. Apollo Metals*, 307 F.3d 160, 166-67 (3d Cir. 2002) (*quoting Kelly v. Drexel Univ.*, 94 F.3d 102, 108-09 (3d Cir. 1996)).  "'[T]he mere fact that an employer is aware of an employee's impairment is insufficient to demonstrate either that the employer regarded the employee as disabled or that the perception caused the adverse employment action.'" *DiSantis*, 2010 WL 3606267, at *6 (*quoting Kelly*, 94 F.3d at 109).  The employer must regard the employee as disabled within the meaning of the ADA (i.e., the employer believed that "she could not perform a wide array of jobs either permanently or for an indefinite duration"). *Behanna v. Monongahela Valley Hosp.*, No. 09-0241, 2010 WL 4340961, at *5 (W.D. Pa. Oct. 22, 2010) (*citing Rinehimer v. Cemcolift, Inc.*, 292 F.3d 375, 382 (3d Cir. 2002)).

Here, Plaintiff has not provided any new argument that was not advanced in her opposition to Defendant's Motion for Summary Judgment.  At the summary judgment stage, this Court held that Plaintiff failed to provide evidence that Defendant regarded her as disabled within the meaning of the ADA.  Plaintiff's evidence merely demonstrated that Defendant knew she was ill and in the hospital, not that Defendant perceived Plaintiff as unable to perform a wide

9

array of jobs or any major life activities.  *See DiSantis*, 2010 WL 3606267, at *6 (*quoting Kelly*,

94 F.3d at 109).  Plaintiff did not show that Defendant regarded her as having anything other than

a short-term illness, which is insufficient.  *See Behanna*, 2010 WL 4340961, at *5; *see also*

*Vierra v. Wayne Mem. Hosp.*, 168 Fed. Appx. 492, 496 (3d Cir. 2006) (affirming grant of

summary judgment where no evidence existed to dispute that the employer "saw her as having a

temporary, non-severe injury without *permanent* or *long-term* impact").  Thus, for the same

reasons stated in the prior opinion, this Court finds that Plaintiff failed to provide sufficient

evidence that she was regarded as disabled by Defendant.  Therefore, this Court denies Plaintiff's

Motion for New Trial because summary judgment was properly granted on the ADA claim.

      **B.**    **Evidentiary Claims**

      **(1)**    **Personnel File**

Plaintiff contends that this Court should vacate the judgment and order a new trial as a

sanction against Defendant for its failure to turn over Plaintiff's personnel file, despite multiple

requests for it during discovery.  Pl.'s Mot. Sanctions ¶ 17.  Plaintiff also argues that she is

entitled to a new trial because this Court erred by admitting the file at trial.  Pl.'s Mem. Law

Supp. Mot. New Trial 1.  In response, Defendant contends that sanctions and a new trial are

inappropriate because it diligently searched for the personnel file.  Def.'s Mem. Law Re: Mot.

Sanctions 5-7.  Defendant asserts that it did not engage in willful misconduct, bad faith, or

flagrant disregard of its discovery obligations or a court order.  *Id.*  Additionally, Defendant

argues that such failure to produce was harmless.  *Id.* at 6; *see also* Def.'s Mem. Law Re: Mot.

New Trial 9-12.  This Court will consider these arguments separately.

**(a)**     **Whether to Order a New Trial as a Sanction for Failing to Produce the Personnel File**

"'The decision to impose sanctions for discovery violations and any determination as to what sanctions are appropriate are matters generally entrusted to the discretion of the district court.'" *Deville v. Givaudan Fragrances Corp.*, 419 Fed. Appx. 201, 205 (3d Cir. 2011) (*quoting Bowers v. Nat'l Collegiate Athletics Ass'n*, 475 F.3d 524, 538 (3d Cir. 2007)). The trial court is given such discretion because it is most familiar with the parties and their conduct. *Id.* at 209. Federal Rule of Civil Procedure 37(c)(1) permits a court to exclude evidence and impose sanctions under the following circumstances:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or 26(e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless. In addition to or instead of this sanction, the court, on motion and after giving an opportunity to be heard:

> (A)     may order payment of reasonable expenses, including attorney's fees, caused by the failure;

> (B)     may inform the jury of the party's failure; and

> (C)     may impose other appropriate sanctions, including any of the orders listed in Rule 37(b)(2)(A)(i)-(vi).[7]

---

[7] Rule 37(b)(2)(A)(i)-(vi) lists the following sanctions:

(i)     directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii)     prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii)     striking pleadings in whole or in part;

11

"'The non-producing party shoulders the burden of proving substantial justification for its conduct or that the failure to produce was harmless." *Klatch-Maynard v. Sugarloaf Twp.*, No. 06-0845, 2011 WL 2006424, at *2 (M.D. Pa. May 23, 2011) (*quoting Tolerico v. Home Depot*, 205 F.R.D. 169, 175 (M.D. Pa. 2002)).

The Third Circuit has not yet defined "substantially justified." *See Grider v. Keystone Health Plan Central, Inc.*, 580 F.3d 119, 140 n.23 (3d Cir. 2009). However, the Third Circuit has held that a district court "must make express rulings upon whether the offending party's conduct was 'substantially justified.'" *Deville*, 419 Fed. Appx. at 208 (*citing Grider*, 580 F.3d at 139). Courts in this circuit "have defined 'substantial justification' as 'justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with this disclosure request.'" *Klatch-Maynard*, 2011 WL 2006424, at *2 (*quoting Tolerico*, 205 F.R.D. at 175). Courts have also considered the non-producing party's diligence in searching for the evidence in determining whether a substantial justification exists. *See, e.g., Walker v. THI of N.M. at Hobbs Ctr.*, 275 F.R.D. 332, 335-36 (D.N.M. 2011). Furthermore, courts have held that "'[a] party's misconduct is harmless if it involves an honest mistake, coupled with sufficient knowledge by the other party of the material that has not been

---

(iv)     staying further proceedings until the order is obeyed;

(v)      dismissing the action or proceeding in whole or in part;

(vi)     rendering a default judgment against the disobedient party.

Nowhere in Plaintiff's filings did she provide any support for the remedy sought (i.e., a court sanctioning a party by upsetting a judgment and granting a new trial for failing to comply with discovery obligations).

produced.'"  *Klatch-Maynard*, 2011 WL 2006424, at *3 (*quoting Tolerico*, 205 F.R.D. at 176).

In the instant case, Plaintiff asserts that sanctions pursuant to Rule 37 are warranted because Defendant failed to produce her personnel file prior to trial.  Plaintiff claims that Defendant's failure to disclose the file was harmful because: (1) she "predicated her trial strategy, in part, upon the lack of the personnel file; and (2) the existence and contents of a personnel file are often critical to a plaintiff's ability to win his or her case."  Pl.'s Mem. Law Supp. Mot. Sanctions 3.  Further, Plaintiff claims that Defendant was "not substantially justified by its failure to locate the file since it follows that Defendant either (1) did not properly file Plaintiff's personnel file, or (2) did not conduct a proper inquiry into the location of all documents requested in this litigation."  *Id.*  In response, Defendant contends that sanctions are inappropriate because Plaintiff suffered no real prejudice.  *See* Def.'s Mem. Law Re: Mot. Sanctions 5-6.  Also, Defendant argues that sanctions are excessive and inappropriate where Defendant could not locate the personnel file.  *Id.*

Factually, after identifying the personnel file in its Initial Disclosures, Defendant undertook a thorough, albeit unsuccessful, search for the personnel file.  According to the declaration of Ms. Rose DiOttavio, who spearheaded the search effort, a number of employees searched for the personnel file in August 2010.  *See* Def.'s Resp. Re: Mot. Sanctions, Ex. 2 ¶ 6. A renewed search for the personnel file was undertaken by ten employees in September and October 2010, after Plaintiff served her Requests for Production.  *See id.* at ¶¶ 7-10.  Ms. DiOttavio also contacted individuals who were no longer with the company, but who may have known where the file was located.  *See id.* at ¶ 11.  None of these efforts were fruitful.  *See id.* at ¶ 14.  However, on June 6, 2011, at the urging of counsel, Ms. DiOttavio again instructed

13

employees to search for the personnel file.  *See id.* at ¶¶ 15-16.  On June 7, 2011, one of

Defendant's employees (Ms. Lois Cody) found the file.  *See id.* at ¶17.  The personnel file

contained, among other things, a handwritten letter by Plaintiff that was highly relevant to her

FMLA claim: Plaintiff's handwritten letter acknowledged that Defendant offered FMLA leave,

but Plaintiff declined it.  *See* Def.'s Resp. Re: Mot. Sanctions, Ex. 1.

   This Court finds that Defendant was substantially justified in not producing the personnel

file earlier because it could not locate the file, despite repeated and extensive search efforts.

Defendant ordered its employees to physically search for the personnel file on three separate

occasions, in August 2010, September 2010, and June 2011.  The searches involved physically

rummaging through files as well as contacting current and former employees.  Accordingly,

Defendant was diligent but unsuccessful, and thus substantially justified, in not producing the

personnel file at a prior time.  *See Walker*, 275 F.R.D. at 335-36.

   Moreover, this Court finds that Defendant's conduct was harmless.  Any error on

Defendant's part in misfiling the documents was due to an honest mistake.  Indeed, Defendant

would have been foolish to intentionally withhold the handwritten letter within the personnel file

which undermined Plaintiff's FMLA case.  Plaintiff had (or should have had) sufficient

knowledge of the documents within the personnel file, especially the handwritten letter that she

submitted to Defendant.  *See Klatch-Maynard*, 2011 WL 2006424, at *3.  Because the alleged

misconduct was harmless, sanctions in this case are not appropriate.  Therefore, this Court denies

Plaintiff's Motion for Sanctions.

   **(b)**  **Whether to Order a New Trial Based Upon an Alleged Error
in Admitting Documents from the Personnel File**

Pursuant to Federal Rule of Civil Procedure 61, a harmless error analysis applies when

determining whether this Court erred by admitting certain documents from the personnel file.[8]

*Agere Sys., Inc. v. Atmel Corp.*, No. 02-864, 2005 WL 2994702, at *6 (E.D. Pa. Aug. 17, 2005).

In ruling on a motion for a new trial, courts consider the following:

> (1) the prejudice or surprise in fact of the party against whom the [evidence is offered], (2) the ability of that party to cure the prejudice, (3) the extent to which [allowing late-offered evidence] would disrupt the orderly and efficient trial of the case or of other cases in the court, and (4) bad faith or willfulness in failing to comply with the district court's order.

*See Canterna v. United States*, 319 Fed. Appx. 93, 98 (3d Cir. 2008) (*quoting Meyers v.*

*Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977)).  The Third

Circuit has stated that the exclusion of evidence is an "'extreme sanction' that is not normally

imposed 'absent a showing of willful deception or 'flagrant disregard' of a court order by the

proponent of the evidence.'" *Id.* (*quoting Meyers*, 559 F.2d at 905).

In the instant case, Defendant began searching for the personnel file in August 2010, as

detailed above.  *See* Def.'s Resp. Re: Mot. Sanctions, Ex. 2 ¶ 6.  On June 7, 2011, Ms. Cody

found the file at some point before eleven o'clock in the morning and gave it to Ms. DiOttavio

around noon.  *See* N.T. 6/8/2011 at 217-19.  Subsequently, Ms. DiOttavio and Defendant's

administrator (Mr. Scott Weisenberger) reviewed the file.  *Id.* at 220-21.  Ms. DiOttavio

---

[8]  Federal Rule of Civil Procedure 61 states as follows:

> Unless justice requires otherwise, no error in admitting or excluding evidence – or any other error by the court or a party – is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order.  At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights.

Fed. R. Civ. P. 61.

delivered the file to defense counsel in the evening.  *See* Def.'s Mem. Law Re: Mot. Sanctions 3-

4.  On the following morning, defense counsel informed this Court of the discovery, and

provided the personnel file to Plaintiff's counsel.  *Id.* at 4; *see also* N.T. 6/8/2011 at 4-5.  At this

time, Plaintiff was still on direct examination; however, the jury was not physically seated in the

courtroom, and Plaintiff was not on the witness stand.  This Court asked both parties' counsel

how they would like to proceed, because the jury was scheduled to enter the courtroom in ten

minutes.  *See* N.T. 6/8/2011 at 19.  Plaintiff's counsel stated that he could be ready by then.  *Id.*

> Mr. Holland:   Can I have quiet so I can read this belatant [sic]
> discovery and be ready in two minutes for the jury, if
> the Court says that's where we're going?
>
> (Pause in proceedings)
>
> Mr. Holland:   Almost ready, Your Honor.
>
> The Court:   Okay.
>
> Mr. Holland:   And my position is, I'm ready to go, and we can –
> portions of this file, ignoring the untimeliness issue,
> okay, portions of this file are admissible.  I'm not
> waiving my contention that the Defendant should be
> sanctioned for this belated discovery privilege [sic],
> but as to the admissibility and utilization of the same
> at trial, why not.  I brought it in issue.
>
> The Court:   Okay.
>
> Mr. Holland:   But I'm saying, it doesn't come in, it doesn't come in
> like the 2005 manual did, it should be coming in
> foundationally through witnesses.
>
> The Court:   Right.  And I would agree that –
>
> Mr. Holland:   Document-by-document on a proffer.
>
> The Court:   Well, we'll – okay.  I understand your position.

Mr. Holland:    Thank you.

The Court:       Shall we line up the jury, or do you need more time[?]

*Id.* at 24-25.

Shortly thereafter, this Court again asked counsel whether they were ready for the jury to enter the courtroom, to which Plaintiff's counsel repeatedly stated that he was indeed ready.[9]  *Id.* at 29.  When Plaintiff's direct examination resumed, Plaintiff's counsel moved for the admission into evidence of certain documents within Plaintiff's personnel file, including a handwritten letter from Plaintiff in which she declined FMLA leave.  *See id.* at 32-79.  This Court separately

---

[9]  The following colloquy transpired:

The Court:       Gentlemen, are we ready?  I'm not trying to rush you,
                 but if we're not –

Mr. Holland:    We're ready, Your Honor.

The Court:       – we might as well –

Mr. Holland:    We're ready.

The Court:       – have the jury –

Mr. Holland:    We're ready.

The Court:       – get comfortable again.   They're standing in line
                 behind the door.

Mr. Holland:    Pardon me?

The Court:       They're lined up, literally standing in line behind the
                 door.

Mr. Holland:    We are ready.

*See* N.T. 6/8/2011 at 29.

admitted each individual document that Plaintiff's counsel proffered, instead of admitting the entire personnel file.  *See id.*

This Court finds that Plaintiff was not prejudiced or surprised by the admission of the evidence.  I reject any contention that Plaintiff was surprised by the admission of the personnel file documents:  Plaintiff signed many of the documents.  Plaintiff even authored the seemingly crucial piece of the evidence from the personnel file (i.e., the handwritten note in which she declined FMLA leave).  Furthermore, Plaintiff's counsel repeatedly stated that he was ready to proceed in response to this Court's offer of additional time.  The trial continued as originally scheduled without any delay or disruption.

There is no evidence from which the Court could conclude that Defendant's failure to produce the file earlier was due to willful deception or flagrant disregard of any court orders. Rather, Defendant made an honest mistake in misfiling the personnel file.  Defendant undertook multiple searches during the course of this litigation to find the personnel folder.  Based upon the extreme nature of excluding evidence under Rule 37, and considering the uncontroverted evidence of Defendant's good faith (and repeated) search efforts, this Court holds that it did not err by admitting the evidence.

In sum, this Court denies Plaintiff's Motion for New Trial to the extent she argues that this Court erred by admitting documents from Plaintiff's personnel file, some of which were in Plaintiff's own handwriting, and which were offered into evidence by Plaintiff's counsel.

### (2)    Prior Employee Manual & Human Resources Documentation

Plaintiff next argues that this Court erred by admitting a prior version of the employee

manual and human resources documentation.[10]  Pl.'s Mem. Law Supp. Mot. New Trial 6.

Specifically, Plaintiff asserts that the prior employee manual was irrelevant because it was not in

effect at the time of Plaintiff's discharge.  *Id.*  Also, Plaintiff contends that the human resources

documentation has no relevance as to whether Plaintiff knew of the No Call/No Show policy

because it was not circulated to employees.  *Id.*  In response, Defendant contends that the prior

employee manual and the human resources documentation were relevant because they were in

effect when Plaintiff was hired and contained explicit references to Defendant's No Call/No

Show policy and FMLA policy.  Def.'s Resp. Re: Mot. New Trial 13.  Defendant also asserts that

these exhibits were utilized to contradict Plaintiff's claim that she was unaware of the policies

prior to her termination.  *See id.*

        "'Where a contention for a new trial is based on the admissibility of evidence, the trial

court has great discretion . . . which will not be disturbed . . . absent a finding of abuse.'"

*Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1370 (3d Cir. 1991) (*quoting Link v.

Mercedes-Benz of N. Am., Inc.*, 788 F.2d 918, 921 (3d Cir. 1986)); *see also Coney v. NPR, Inc.*,

No. 03-1324, 2007 WL 2571452, at *7 (E.D. Pa. Aug. 31, 2007).  "An error or defect that 'does

not affect the substantial rights of the parties' is harmless, and thus must be disregarded."  *Coney*,

2007 WL 2571452, at *7 (*quoting* Fed. R. Civ. P. 61).  "In making the determination of whether

an error was harmless, the court considers the centrality of the evidence and the prejudicial effect

---

        [10]  Plaintiff refers to the prior employee manual as the "2006 Employee Manual."  Pl.'s
Mem. Law Supp. Mot. New Trial 6.  The prior employee manual, however, is undated and was in
effect when Plaintiff was hired in 2005, which causes Plaintiff's label of the prior employee
manual to be confusing.  *See* Def.'s Ex. 16b.  Thus, for the sake of clarity, this Court will refer to
the manual in effect at the time of Plaintiff's termination as the "current employee manual" and
the prior manual as the "prior employee manual."

of its inclusion or exclusion." *Id.* (citation omitted).  "Such a determination is not a mere mechanical analysis, but depends upon the facts of each particular case." *Id.*

"Under the Federal Rules of Evidence, evidence may only be admitted if it is 'relevant.'" *Winters v. Marina Dist. Dev. Co.*, 317 Fed. Appx. 286, 288 (3d Cir. 2009) (*citing* Fed. R. Evid. 402).  "Evidence is relevant if it has 'any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'" *Id.* (*citing* Fed. R. Evid. 401).

In the instant case, this Court overruled Plaintiff's objections and admitted the prior employee manual and the human resources documentation.  *See* N.T. 6/8/2011 at 231-32, 233-34.  Both the prior employee manual and the human resources documentation were relevant, and thus were properly admitted at trial.  First, the prior employee manual is relevant because it contains Defendant's attendance policy (including the No Call/No Show policy) and FMLA policy.  *See* Def.'s Ex. 16b.  At trial, Defendant provided evidence that the prior employee manual was in effect when Plaintiff was hired in 2005, and the same policy remained in effect throughout her employment.  *See* N.T. 6/6/2011 at 154-58.  Plaintiff even signed an acknowledgment, stating that Plaintiff received the prior employee manual.  *See* Def.'s Ex. 53c (signed and dated March 22, 2006).  Ultimately, the prior employee manual was relevant because it showed that Defendant's policies were in effect during Plaintiff's employment.  The prior employee manual also contradicted Plaintiff's claim that she was unaware of the No-Call/No-Show policy and the FMLA policy until the waning days/moments of her employment.  *See* N.T. 6/8/2011 at 39-40, 98-99.  Therefore, this Court properly admitted the prior employee manual.

Second, this Court admitted Defendant's Human Resources Policy Manuals.  Def.'s Ex.

44a, 44b, 44c.  The first Human Resources Policy Manual concerns Defendant's FMLA policy, and the remaining two set forth Defendant's standards of conduct (which permit immediate termination for "[a]bsence for two (2) days without notification," i.e., the No Call/No Show policy).[11]  *See id.*  Similar to the prior employee manual, these human resources manuals were relevant because they evidenced the policies in effect during Plaintiff's employment.  Additionally, these documents were relevant to contradict Plaintiff's counsel's statement that the human resources manuals were not produced in discovery.  *See* N.T. 6/6/2001 at 175, 183.  Plaintiff failed to cite, and this Court has not found, any support for Plaintiff's argument that these human resources manuals were irrelevant because they were not circulated to employees.  Moreover, the human resources manuals, although uncirculated, were available to any employee.  *See* N.T. 6/6/2011 at 174, 189.  Thus, this Court properly admitted the human resources documentation.

Therefore, this Court will deny Plaintiff's Motion for New Trial to the extent she argues that this Court erroneously admitted the prior employee manual and human resources documentation.

### C.    Jury instructions

Where a party claims that a jury instruction was erroneous as a matter of law, the court considers "whether, taken as a whole, the instruction properly apprised the jury of the issues and

---

[11]  The two policy manuals that concern Defendant's standards of conduct are the same. *Compare* Def.'s Ex. 44b, *with* Def.'s Ex. 44c.  The only differences are the bates stamp and that Exhibit 44c contains a handwritten notation that it was revised on August 4, 2008 – which was after Plaintiff's termination.  *See* Def.'s Ex. 44c.  Therefore, even if this Court erred in admitting Exhibit 44c, such error was harmless as Exhibit 44b is the same document, except for these two insignificant differences.

the applicable law." *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 78 (3d Cir. 2009)

(*citing Dressler v. Busch Entm't Corp.*, 143 F.3d 778, 780 (3d Cir. 1998)).  An error with the

instruction exists if it "fails to 'fairly and adequately' present the issues in the case without

confusing or misleading the jury." *Id.* at 79 (*citing United States v. Ellis*, 156 F.3d 493, 498 n.7

(3d Cir. 1998)).  Further, "'[n]o litigant has the right to a jury instruction of its choice, or

precisely in the manner and words of its own preference.'"  *State Farm Mut. Auto. Ins. Co. v.

Lincow*, 715 F. Supp.2d 617, 638 (E.D. Pa. 2010) (*quoting Douglas v. Owens*, 50 F.3d 1226,

1233 (3d Cir. 1995)).  "A court's review of a jury instruction should be undertaken with an eye

towards the instructions in their totality and 'not a particular sentence or paragraph in isolation.'"

*Agere Sys.*, 2005 WL 2994702, at *2 (*quoting In re Braen*, 900 F.2d 621, 626 (3d Cir. 1990)).  In

addition to proving that the instruction was in error, the movant must show that the error was

prejudicial (i.e., where "it 'appears to the court [that the error is] inconsistent with substantial

justice'").  *Id.* (*quoting Advanced Display Sys., Inc. v. Kent State Univ.*, 212 F.3d 1272, 1281

(Fed. Cir. 2000)).

     As to a jury verdict sheet, "'the questions asked of the jury [must] be adequate to

determine the factual issues essential to the judgment.'"  *Kant v. Seton Hall Univ.*, 279 Fed.

Appx. 152, 157 (3d Cir. 2008) (*quoting McNally v. Nationwide Ins. Co.*, 815 F.2d 254, 266 (3d

Cir. 1987)).  Courts consider the instructions and verdict sheet together to determine if the trial

court in fact erred.  *See id.* at 158.

     In the instant case, Plaintiff moves for a new trial based upon this Court's alleged error

by: (1) failing to include a question on the verdict sheet concerning an employer's notice

requirement; (2) confusing the jury by utilizing the term "appropriate notice"; and (3) failing to

instruct the jury on statements against interest.  This Court will analyze each claim separately.

       **(1)**      **Failure to Include Employer's Notice Requirement on Verdict Sheet**

      Plaintiff claims that the verdict sheet provided to the jury was in error because it failed to apprise the jury of an employer's notice requirement.  *See* Pl.'s Mem. Law Supp. Mot. New Trial 7-8.  In response, Defendant contends that this Court properly instructed the jury even though the verdict sheet did not include a question regarding an employer's notice requirement.  *See* Def.'s Mem. Law Re: Mot. New Trial 15-16.  Further, Defendant asserts that Plaintiff admitted that Defendant gave sufficient notice based upon a handwritten letter where Plaintiff states that she was not interested in taking FMLA leave.  *See id.*

      The FMLA was enacted to "'balance the demands of the workplace with the needs of families' and 'to entitle employees to take reasonable leave for medical reasons . . . in a manner that accommodates the legitimate interests of employers.'"  *Fogleman v. Greater Hazelton Health Alliance*, 122 Fed. Appx. 581, 586 (3d Cir. 2004) (*quoting* 29 U.S.C. § 2601(b)(1)-(3)). "[T]he FMLA requires that 'an eligible employee shall be entitled to a total of twelve workweeks of leave during any twelve month period' if the employee has a 'serious health condition that makes the employee unable to perform the functions of the position of such employee.'"  *Id.* (*quoting* 29 U.S.C. § 2612(a)(1)(D)).  "It is illegal for an employer to 'interfere with, restrain, or deny the exercise of or the attempt to exercise, any right' under the FMLA."  *Schaar v. Lehigh Valley Health Servs., Inc.*, 732 F. Supp.2d 490, 496 (E.D. Pa. 2010) (*quoting* 29 U.S.C. § 2615(a)(1)).

      "Under the regulations, the employer must communicate with employees regarding their rights under the FMLA, providing individualized notice to employees regarding their FMLA

rights and obligations." *Fogleman*, 122 Fed. Appx. at 587.  An employer's failure to advise an employee of her right to FMLA leave after she properly gave notice of a serious health condition would constitute interference, as long as the employee can show resulting prejudice. *Conoshenti v. Pub. Serv. Elec. & Gas Co.*, 364 F.3d 135, 143-44 (3d Cir. 2004).

In this case, the instructions and verdict sheet were derived from the Third Circuit's model instructions because the parties were unable to agree on a joint verdict sheet.  Specifically, this Court utilized Model Instruction 10.1.1, which describes the elements of an interference claim under the FMLA.  The verdict sheet traced the elements as enunciated in the model jury instruction and asked the jury to determine whether: (1) Plaintiff suffered from a "serious health condition"; (2) Plaintiff gave "appropriate notice" of her need to be absent from work; (3) Defendant willfully interfered with Plaintiff's right to take unpaid FMLA leave; and (4) Defendant would have terminated Plaintiff because she failed to comply with the No Call/No Show policy.  (Doc. No. 64).  This Court rejects Plaintiff's assertion that the instructions and verdict sheet were flawed:  both were based upon – and the instructions were nearly verbatim recitations of – the Third Circuit's model instructions.  *See Lawler v. Richardson*, No. 10-196, 2012 WL 2362383, at *10 (E.D. Pa. June 20, 2012).

Also, although the verdict sheet did not specifically include the language "employer's notice requirement," this Court detailed the requirement by reading a jury instruction proposed by Plaintiff, as well as Model Instruction 10.1.1.  *See* N.T. 6/9/2011 at 22-24, 26-27.  The instructions explained at length an employer's notice obligations: displaying notices on the premises, defining an employee's rights in an employee handbook, and responding to an employee's request for leave.  Further, this Court instructed the jury that interference exists if an

employer failed to "provide an employee, who gives notice of the need for a leave, a written notice detailing the . . . specific expectations and obligations of the employee, and explaining any consequences of a failure to meet these obligations." *Id.* at 23-24; *see also* Model Third Circuit Civil Jury Instruction No. 10.1.1.  When considering the jury instructions and verdict sheet together, it is apparent that the employer's notice requirement was encompassed by the interrogatory concerning whether Defendant interfered with Plaintiff's FMLA rights.  Thus, the jury interrogatories were "'adequate to determine the factual issues essential to the judgment.'" *See Kant*, 279 Fed. Appx. at 157-58 (*quoting McNally*, 815 F.2d at 266).  This Court did not err in failing to include a specific and separate jury interrogatory concerning the employer's notice obligations in the verdict sheet.

Therefore, this Court will deny Plaintiff's Motion for New Trial to the extent she argues that the verdict sheet improperly omitted an interrogatory concerning an employer's notice obligations.

### (2)    "Appropriate Notice" in the Verdict Sheet

Plaintiff next argues that the verdict sheet was "so vague that the jury could not help but be confused as to whether 'appropriate notice' meant under the Employer's No Call/No Show policy or under the FMLA notice provisions."  Pl.'s Mem. Law Supp. Mot. New Trial 7-8. Plaintiff further argues that if "appropriate notice" referred to the FMLA notice provisions, the jury's answer is against the weight of the evidence.  *Id.* at 8.  In response, Defendant asserts that, taken as a whole, this Court properly instructed the jury on the applicable law.  Def.'s Mem. Law Re: Mot. New Trial 14-15.  Additionally, Defendant contends that the jury's verdict was supported by the evidence.  *Id.* at 6-8.

25

In order to trigger the FMLA, "an employee must provide his employer with notice that leave is necessary." *Johnson v. Thru Point, Inc.*, 160 Fed. Appx. 159, 162 (3d Cir. 2005) (*citing* 29 C.F.R. § 825.303).  Where the need for FMLA leave is unforeseeable, the regulations state that "an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case." *See* 29 C.F.R. § 825.303(a) (2007).[12]  "It is expected that an employee will give notice to the employer within no more than one or two working days of learning of the need for leave, except in extraordinary circumstances where such notice is not feasible." *Id.*  "The former regulations did not require that an employee's notice to the employer contain any particular content, and instead provided only that '[t]he employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed.'" *Hayduk*, 386 Fed. Appx. at 62 (*citing* 29 C.F.R. § 825.303(b)).

As previously mentioned, the instructions and verdict sheet were derived from the Third Circuit's model instructions after the parties were unable to agree on a joint verdict sheet.  This Court adopted the term "appropriate notice" from the model instruction and utilized Model Instruction 10.1.1 to define the term.  *See* N.T. 6/9/2011 at 22-24.  Model Civil Jury Instruction 10.1.1 states that, in order to succeed, Plaintiff must prove the elements of an interference claim. As a third element, Plaintiff must prove that she "gave **appropriate notice** of her need to be absent from work."  *See* Model Third Circuit Civil Jury Instruction No. 10.1.1 (emphasis added).

---

[12]  Plaintiff utilized the language of the regulations as currently written.  However, the events that led to the instant litigation occurred in 2007.  Therefore, this Court will utilize the regulations that were in effect at the time of Plaintiff's termination.  *See Hayduk v. City of Johnstown*, 386 Fed. Appx. 55, 62 (3d Cir. 2010).

26

"Appropriate notice" was given where, "if Plaintiff could not foresee the need for leave, Plaintiff notified the defendant as soon as practicable after she learned of the need for leave." *Id.*

> Plaintiff was required to timely notify Defendant of the need for leave, but Plaintiff was not required to specify that the leave was sought under the Family and Medical Leave Act, nor was Plaintiff required to mention that Act in the notice. Nor was Plaintiff required to provide the exact dates or duration of the leave requested. Moreover, Plaintiff was not required to give Defendant a formal written request for anticipated leave. Simple verbal notice is sufficient. The critical question for determining "appropriate notice" is whether the information given to Defendant was sufficient to reasonably apprise it of Plaintiff's request to take time off for a serious health condition.

*Id.*

This Court finds that the instructions as a whole described Plaintiff's duty, consistent with the prevailing law. *See* N.T. 6/9/2011 at 23. A court should review "the instructions in their totality and 'not a particular sentence or paragraph in isolation.'" *See Agere Sys.*, 2005 WL 2994702, at *2 (*quoting In re Braen*, 900 F.2d at 626). When considering the jury instructions as a whole, the term "appropriate notice" was thoroughly defined and explained, and the specific jury interrogatory was "'adequate to determine the factual issues essential to the judgment.'" *See Kant*, 279 Fed. Appx. at 157-58 (*quoting McNally*, 815 F.2d at 266). This Court cannot conclude that the use of the term "appropriate notice" so "altered the jury's thinking to give . . . a misimpression in this case." *See Donlin*, 581 F.3d at 79 (holding that the use of the single word "accuracy" in an instruction was not in error). Moreover, it is difficult to credit Plaintiff's assertion that the use of the term "appropriate notice" was flawed, considering that it was taken directly from the Third Circuit's model instructions. *See Lawler*, 2012 WL 2362383, at *10. Therefore, this Court did not err by utilizing the term "appropriate notice."

Plaintiff also argues that if "appropriate notice" referred to the notice required under the FMLA, the verdict was "against the weight of the evidence because of the defense witnesses' testimony that Ms. Waites was offered FMLA leave, thereby demonstrating that the Defendant knew of her qualifying circumstances." Pl.'s Mem. Law Supp. Mot. New Trial 8. On the other hand, Defendant contends that the verdict was supported by the evidence, relying upon Mr. Kevin Collier's and Mr. Millard D. Freeman's testimony as well as Plaintiff's handwritten note. Def.'s Mem. Law Re: Mot. New Trial 6-8.

This Court finds that the verdict was not against the weight of the evidence. The jury found that although Plaintiff suffered from a serious health condition, she did not give appropriate notice of her need to be absent from work. (Doc. No. 64). Under the FMLA, "'an employee should give notice to the employer of the need for FMLA leave as soon as practicable under the facts and circumstances of the particular case.'" *Hayduk*, 386 Fed. Appx. at 62 (*quoting* 29 C.F.R. § 825.303(a)). "'[T]he employee need not expressly assert rights under the FMLA or even mention the FMLA, but may only state that leave is needed.'" *Id.* (*quoting* 29 C.F.R. § 825.303(b)). Both Mr. Collier and Mr. Freeman testified that Plaintiff did not inform them of her need for leave or a qualifying reason for the leave. *See* N.T. 6/6/2011 at 171; N.T. 6/7/2011 at 159-60. Additionally, in the handwritten note, Plaintiff acknowledged that she was told to contact the human resources department if she would be taking FMLA leave; however, Plaintiff declined to do so. *See* Def.'s Ex. 53a. Sufficient evidence exists to support the jury's verdict that Plaintiff failed to give Defendant appropriate notice of her need for FMLA leave. Thus, this Court finds that Plaintiff has not proven that "the jury's verdict resulted in a miscarriage of justice or . . . cries out to be overturned or shocks [the court's] conscience." *See*

*Greenleaf*, 174 F.3d at 366 (3d Cir. 1999) (*quoting Williamson*, 926 F.2d at 1353).  Therefore, to

the extent Plaintiff argues that the verdict was against the weight of the evidence, Plaintiff's

Motion for New Trial is denied.

### (3)     Failure to Instruct on Statement Against Interests

Plaintiff vaguely argues that this Court erred by failing to instruct the jury regarding

statements against interest as requested by Plaintiff.  Pl.'s Mot. New Trial ¶ 38.  Plaintiff,

however, fails to expound upon this argument.  In response, Defendant contends that "nowhere in

Plaintiff's papers is there any reference to a Statement against Interest that was even in play in

this case."  Def.'s Mem. Law Re: Mot. New Trial 16.

It appears that Plaintiff is arguing that this Court failed to utilize Plaintiff's Proposed

Supplemental Jury Charge, which was filed on June 9, 2011 (the last day of trial).  (Doc. No. 57).

This proposed instruction concerned testimony given during depositions and in response to

interrogatories.  Although Plaintiff's proposed instruction was not utilized, this Court did in fact

instruct the jury on the applicable law.  Specifically, this Court used Model Instruction 2.5, which

describes a deposition, and explained the use of deposition testimony as evidence.  *See* N.T.

6/8/2011 at 19-20.  Further, this Court utilized Model Instruction 1.7, which lists factors to

consider in determining a witness's credibility, including "whether the witness was contradicted

by anything the witness said or wrote before trial or by other evidence."  *See id.* at 19.  Taken as a

whole, this Court finds that the jury was properly apprised of the applicable law.  *See Donlin*, 581

F.3d at 78 (*citing Dressler*, 143 F.3d at 780).  Additionally, this Court was not required to read

the language proposed by Plaintiff.  *See Lincow*, 715 F. Supp.2d at 638 (*quoting Douglas*, 50

F.3d at 1233).  Therefore, this Court will deny Plaintiff's Motion for New Trial to the extent she

argues that this Court failed to instruct the jury on statements against interest.

**D.   Retaliation Claim**

Finally, Plaintiff argues that this Court erred in failing to reconsider its dismissal of Plaintiff's retaliation claim, and for failing to instruct the jury on same.  Pl.'s Mem. Law Supp. Mot. New Trial 11-12.  Plaintiff contends that "[t]hroughout the course of trial, Plaintiff sought to add jury instructions to clarify elements of the case."  *Id.* at 11.  In response, Defendant asserts that this Court properly dismissed the retaliation claim and, in turn, chose not to instruct the jury, because: (1) Plaintiff's counsel waived a retaliation theory by stating that he was only proceeding on an interference claim at the Pretrial Conference; and (2) any error was harmless.  Def.'s Mem. Law Re: Mot. New Trial 16-17.

Plaintiff's counsel's assertion that he requested a retaliation charge "[t]hroughout the course of trial" is not accurate.  *See* Pl.'s Mem. Law Supp. Mot. New Trial 11.  Plaintiff did not seek an instruction on retaliation in the proposed jury instructions that were submitted before trial and discussed at the Pretrial Conference.  (Doc. No. 41).  Further, at the Pretrial Conference, Plaintiff's counsel stated that he did not intend to utilize a retaliation theory of liability, which prompted this Court to forgo instructing the jury on retaliation before the opening statements.  In fact, Plaintiff first requested such an instruction during the final charging conference.  *See* N.T. 6/7/2011 at 271-73.  Even Plaintiff's opening statement focused exclusively upon the interference claim.  *See* N.T. 6/6/2011 at 15-24.  Plaintiff filed a supplemental proposed jury instruction concerning retaliation on June 9, 2011, which was the last day of trial.  (Doc. No. 58). In sum, the record belies Plaintiff's counsel's statement that he requested such a charge throughout the trial.

30

Moreover, Plaintiff is correct in noting that the Third Circuit has stated that "firing an employee for a valid request for FMLA leave may constitute interference with the employee's FMLA rights as well as retaliation against the employee." *Erdman v. Nationwide Ins. Co.*, 582 F.3d 500, 509 (3d Cir. 2009). Though two distinct theories, "the first elements of both theories are essentially identical: a plaintiff pressing either theory must establish, among other things, that he had a right to FMLA benefits. To that end, the plaintiff must demonstrate that he gave his employer adequate notice of his need for FMLA leave." *Hayduk*, 386 Fed. Appx. at 60. Consequently, the pivotal question for both theories is whether the employee gave appropriate notice to the employer. *See id.*

In the instant case, this Court instructed the jury regarding the elements of an interference claim, which included a requirement of the employee to give notice. *See* N.T. 6/9/2011 at 22-23, 25-26. The jury verdict sheet posed the following interrogatory: "Do you find that plaintiff, Bernadette Waites has proven, by a preponderance of the evidence, that she gave appropriate notice of her need to be absent from work?" (Doc. No. 64). The jury answered this interrogatory in the negative. Thus, the pivotal question (i.e., notice) was posed to the jury, and as the verdict sheet demonstrates, answered in the negative. Because Plaintiff would not have succeeded on the retaliation theory even if the instruction was given, any error was harmless. *See Hayduk*, 386 Fed. Appx. at 60. Therefore, this Court finds that a new trial is not warranted for this Court's dismissal of Plaintiff's retaliation claim, and failure to instruct on same.

IV.   **CONCLUSION**

For all the reasons stated herein, Plaintiff's Motion for Sanctions and Plaintiff's Motion for a New Trial are denied.

An appropriate order follows.


BY THE COURT:


/s/ Lynne A. Sitarski
LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE